NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PETER F. SPRAGUE, on behalf of the United States of American and individually<br><br>Plaintiff/Relator<br><br>v.<br><br>MEDICAL WORLD COMMUNICATIONS, INC., NOVICOM, INC., ROMAINE PIERSON PUBLISHERS, INC., MEDICAL WORLD BUSINESS PRESS, INC., DENTAL LEARNING SYSTEMS CO., INC., JOHN J. HENNESSY II, MEDIA/COMMUNICATIONS PARTNERS II LIMITED PARTNERSHIP, CHRISTOPHER S. GAFFNEY,<br><br>Defendants. | Civ. No. 99-5571 (GEB)<br><br>**MEMORANDUM OPINION** |

**BROWN, District Judge**

This matter comes before the Court upon plaintiff's motion for attorneys' fees and costs. The instant motion arises out of a *qui tam* action pursuant to the False Claims Act, 31 U.S.C. § 3729 *et seq*. Upon consideration of the parties' submissions and oral argument by counsel on November 3, 2003, plaintiff's motion will be granted in part and denied in part.

**I.    BACKGROUND**

The parties have set forth the factual and procedural history of this case at length and the Court will thus only briefly summarize them as necessary.

Plaintiff/Relator Peter Sprague filed an action against his former employer, defendant

Medical World Communications, Inc. ("MWC") and several other defendants in November 1999. The Complaint included *qui tam* claims under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.* as well as, *inter alia*, plaintiff's individual claims for retaliation under §3730(h) of the False Claims Act and violation of the New Jersey Conscientious Employee Protection Act. (Pl. Brief, p. 5.) The FCA claims related to MWC's defrauding the United States Postal Service of postage for mailing its periodicals.

In December 2002, the United States intervened after over three years of investigation, and after settlement negotiations broke down in the fall of 2002. (Pl. Brief, p. 6.) The United States elected to intervene in the *qui tam* action and filed its Amended Complaint against MWC and its parent entity, the principals of each, and MWC's subsidiaries as well. (*Id.*) The Government's Complaint charged the defendants with conspiring in a scheme to defraud the Postal Service of postage from 1994 to 2000 by mailing eleven MWC publications at 2nd Class postage rates when they knew that the publications did not qualify for those rates. (*Id.*)

In May 2003, MWC and the Government agreed to settle the FCA claims. On July 18, 2003, a Stipulation of Dismissal and Order dismissing the government's complaint with prejudice was entered and the case was closed. The Stipulation was entered pursuant to a Settlement Agreement between MWC and the United States of America, acting through the United States Department of Justice and on behalf of the United States Postal Service ("USPS"). The Settlement Agreement included the payment of $3,700,000 in damages by MWC to the United States. (Pl. Brief, p. 1.) The Settlement Agreement also required MWC to adopt a "state-of-the-art" Corporate Integrity Agreement to insure MWC's ongoing compliance with the law. (Pl. Brief, p. 1.) As a result of Mr. Sprague's role in the *qui tam* litigation, the Government

awarded him 21% of the settlement amount. (Pl. Brief, p. 8.)

On September 26, 2003, plaintiff filed the instant motion for attorneys' fees and costs. Specifically, plaintiff requests attorneys' fees and costs in the amount of $317,461.55 to be taxed against all defendants.[1] Defendants contend that $75,261.28 is the maximum amount of fees that should be awarded. (Def. Brief, p. 26.)

Defendants do not dispute the reasonableness of the hourly rates charged by plaintiff's counsel. Rather, defendants dispute the reasonableness of the hours worked because they contend certain tasks were either unrelated to the *qui tam* action or duplicative of work performed by other attorneys.

## II.  DISCUSSION

### A.  *The False Claims Act Applies to Actions Involving Fraud Committed Upon the United States Postal Service*

The False Claims Act ("FCA") applies to actions involving fraudulent underpayment to the Federal Government. The "typical" FCA claim occurs when a person "knowingly presents, . . . to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval[.]" 31 U.S.C. § 3729(a)(1). A "reverse" FCA claim is a result of a defendant withholding money from the government by false statements. *United States v.*

---

[1] The original defendants were Medical World Communications, Inc. ("MWC"), Novicom, Inc., Romaine Pierson Publishers, Inc., Medical World Business Press, Inc., Dental Learning Systems Co., Inc., John J. Hennessy II, Media/Communications Partners and Christopher S. Gaffney (collectively, "defendants"). The amount was adjusted in Plaintiff's reply brief from $348,709.94 to $317,461.55 in order to correct a billing adjustment made by plaintiff that should have been reversed in calculating Blank Rome LLP's charges..

*Raymond & Whitcomb Co.*, 53 F. Supp. 2d 436 (S.D.N.Y. 1999).  "While a typical [FCA] action alleges an excessive payment *from* the United States to the defendant, the statute also supports a 'reverse false claim' action alleging an insufficient payment to the United States from the defendant." *Id*. at 444 (emphasis in original).  Accordingly, here, because the defendants failed to make sufficient payments to the Postal Service through fraudulent statements, the action asserted against them was based on the "reverse" FCA claim.

Defendants contend that the FCA does not apply because the United States Postal Service is "an independent establishment of the executive branch that is not supported by" the United States Treasury. (Def. Brief, p. 9.)  Thus, defendants contend that plaintiff is not entitled to attorneys' fees under the FCA.  They argue that the FCA does not apply because the funds of the Postal Service are independent of the United States Treasury and thus, the public fisc is not involved.

The operational and functional autonomy of the Unites States Postal Service does not take it wholly out of the federal government.  The Postal Service's independence is "tempered by other [provisions] which tie the postal service intimately to the rest of the government."  *Hill, Christopher & Phillips, P.C. v. United States Postal Service*, 535 F. Supp. 804, 812 (D.C. Cir. 1982).  Additionally, "the managerial and financial independence [that] was granted to the Postal Service by no means mandated that [it] was to be divorced from the United States Government." *Id.*  Thus, the Court disagrees with defendants' contention that the FCA does not apply.

Moreover, the FCA has been applied to situations such as this, where a defendant has been alleged to have committed a fraud upon the Postal Service.  *United States v. Q Int'l Courier, Inc.*, 131 F.3d 770 (8th Cir. 1997) (granting summary judgment to defendant courier on

4

grounds that government failed to establish defendant's "obligation" to the government under FCA); *United States v. Raymond & Whitcomb Co.*, 53 F. Supp. 2d 436 (S.D.N.Y. 1999) (government alleged that defendant improperly used the non-profit postage rate in violation of the False Claims Act). Thus, this action is covered by the "reverse" false claims provision of the FCA which applies to any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the United States Government[.]" 31 U.S.C. § 3729(a)(7). There is no dispute in this case that MWC had an obligation to pay the proper postage rates to the Postal Service.

Finally, contrary to defendants' contention, section 410(a) of the Postal Reorganization Act ("PRA") does not take the Postal Service outside the scope of the FCA. The statute states, "no Federal law dealing with public or Federal contracts, property, works, officers, employees, budgets, or funds, . . . shall apply to the exercise of powers of the Postal Service." 39 U.S.C. § 410(a). Defendants would have the Court construe the statute in a way that would read postal or mail fraud out of the FCA and essentially read the United States Postal Service out of the Federal Government. However, this statute simply allows the Postal Service to act independently of laws and regulations that must be followed by other agencies when entering into contracts or dealing with property, hiring or discharging employees, and/or maintaining its budget and finances. The PRA does not limit the right of private citizens or the United States to prosecute violations of the FCA to the exclusion of fraud against the Postal Service. Thus, the Court holds that the FCA properly applies here.

### B. *Plaintiff is Entitled to Reasonable Attorneys' Fees*

Under 31 U.S.C. §3730(d), a *qui tam* plaintiff is entitled to a percentage of the proceeds of the "action or settlement of the claim, depending upon the extent to which the person substantially contributed to the prosecution of the action." The statutes also provides:

> Any such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant.

31 U.S.C. §3730(d). Thus, the fact that the action resulted in a settlement does not preclude an award of reasonable attorneys' fees and costs to plaintiff.

Courts follow the "lodestar" method to calculate the amount of reasonable attorneys' fees and costs in *qui tam* actions. *See e.g. Neal v. Honeywell, Inc.*, 191 F.3d 827 (7th Cir. 1999). A district court should determine the amount "by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989) (citations omitted). When calculating the lodestar amount, the Court should exclude the amount of time spent on claims unrelated to the claims on which the party prevailed. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

The party seeking a fee award has the burden of proving that the request is reasonable and supported by evidence. *Rode v. Dellarciprete*, 892 F. 2d 1177, 1183 (3d Cir. 1990). The party opposing the award has the burden of challenging the reasonableness of the fee requested "by affidavit or brief sufficiently specific to give the applicant notice of the challenge." *United States ex rel. John Doe I v. Pennsylvania Blue Shield*, 54 F. Supp. 2d 410, 414 (M.D.Pa. 1999) (citations omitted).

The district court may exclude hours that are not reasonably expended, i.e. hours that are

"excessive, redundant, or otherwise unnecessary." *Rode*, 892 F.2d at 1183 (citing *Hensley*, 461 U.S. at 433). The court may also deduct hours when there is inadequate documentation for the hours claimed. *Id.* (same). Finally, a district court will determine the reasonable hourly rate according to the prevailing market rates in the community. *Blum v. Stenson*, 465 U.S. 886, 895 (1984).

Plaintiffs have submitted summaries and billing records for attorneys and other legal personnel who worked on the *qui tam* action. (Pl. Brief, Exhs. D-G and supporting declarations; Pl. Reply Brief, Exhs. A, C-D and supporting declarations.) Defendants have submitted various charts analyzing the hours worked and work completed by plaintiff's counsel. *See* Certification of Deborah G. Morano ("Morano Cert.") Exhs. D-G. For example, defendants have divided the fee request into pre-Complaint and post-Complaint totals and calculated downward adjustments based upon their evaluation of whether the work performed was related to the *qui tam* claims. (Morano Cert., Exh. H.)

Based upon the parties' submissions detailing the work performed and the hours spent on this litigation, the following constitutes the Court's findings with respect to the reasonableness of the hours expended by counsel.

1. <u>Nicholas C. Harbist, Esq. and other Blank Rome LLP Personnel</u>

Plaintiff requests $169,713.50 for legal services rendered by lead *qui tam* counsel, Nicholas C. Harbist and other Blank Rome LLP ("Blank Rome") personnel from September 1999 through August 2003. (Pl. Reply Brief, Supplemental Declaration of Deborah Giaquinto, Exh. D.) The total amount represents the work of eight individuals, consisting of nearly 570

hours over the course of approximately four years.  Mr. Harbist's work on the *qui tam* litigation began prior to the filing of the Complaint and carried on throughout the duration of the lawsuit and included conjunctive efforts with the United States Attorney after the Government intervened.  (Pl. Brief, Declaration and Billing Records of Nicholas C. Harbist, Exh. D.) ("Harbist Decl.").  Mr. Harbist, the associates and legal personnel at Blank Rome worked on various aspects of the *qui tam* litigation, from legal research, drafting, developing and maintaining evidence, to investigation and other efforts in conjunction with government attorneys, to working on settlement.  (Harbist Decl.)

The Court finds that the hours spent by Mr. Harbist, his associates, and legal personnel were reasonable.  The Court also finds that the hourly rates charged by Blank Rome for their attorneys and other personnel were reasonable.  The Court will not adjust any amount of the Blank Rome fees with respect to pre- or post-complaint work as the billing summary and supporting declaration sufficiently support that the work was dedicated to the *qui tam* action.

Further, the Court will not adjust the amount to exclude time related to the government's efforts.  The Court finds that the adjustments to Mr. Van Schaick and Mr. Smith's time as set forth below sufficiently account for any "double billing" resulting from having multiple counsel working on the same case.  Thus, plaintiff shall receive the full amount requested ($167,713.50) for Blank Rome's attorneys' fees.

        2.    <u>Peter Van Schaick, Esq.</u>

Plaintiff requests $ 89,338.00 in fees for legal services rendered by Peter Van Schaick from May 1999 through May 2003 at the rate of $350.00 per hour.  Defendants contend that Mr.

Van Schaick's fees should be excluded from the fee award because his work related solely to Mr. Sprague's personal employment claims. Moreover, they contend his time should be excluded to the extent it was duplicative of work done or time spent by lead *qui tam* counsel. (Def. Brief, p.22). Specifically, defendants posit that approximately $49,000 of Mr. Van Schaick's fees should be excluded.

Mr. Van Schaick's pre-complaint fees total $14,980.00. The Court will adopt defendants' suggested adjustment and divide this amount by three to discount time spent on the non-*qui tam* claims. Thus, plaintiff shall receive $4,993.33 of Mr. Van Schaick's pre-complaint fees. The remaining amount of $74,358.00 for Mr. Van Schaick's post-complaint fees, represents approximately 212.5 hours of work from February 2000 until May 2003. A review of Mr. Van Schaick's billing summary shows that many of his tasks involved telephone conferences and meetings with other attorneys representing Mr. Sprague. The Court finds that 60.7 hours of that time was spent conducting conferences or meetings with Nicholas Harbist or Jeffrey Smith. Thus, the Court will award fees for 151.8 hours of Mr. Van Schaick's post-complaint hours. Accordingly, plaintiff will receive $53,130.00 of Mr. Van Schaick's post-complaint fees. Thus, the total amount of fees awarded to plaintiff for Mr. Van Schaick's legal services is $58,123.33.

      3.     <u>Devon Russ, Paralegal</u>

Plaintiff requests $27,360.00 in fees for services rendered by Mr. Van Schaick's paralegal, Devon Russ, from October 2002 until June 2003. The amount was arrived at by dividing her total hours (608) by half to represent the time she spent on the *qui tam* portion of the case and then multiplying that number by the hourly rate of $90.00. Thus, over the course of

9

nine months, Ms. Russ worked a total of approximately 304 hours on the *qui tam* portion of this case.

Defendants contend that Ms. Russ' fees should not be included the fee award because her work was dedicated to Mr. Sprague's personal employment case.  Primarily, Ms. Russ utilized a litigation support software to manage and evaluate facts and evidence and corresponding legal issues.  (Pl. Brief, Exh. F, Declaration and Billing Records of Devon Russ.)

Ms. Russ' time is submitted by monthly totals and a declaration is submitted to summarize her tasks related to this case and the *qui tam* portion of it in particular.  (*Id.*) Attorneys seeking compensation for their fees must document their hours with sufficient specificity to allow the district court to determine if the hours claimed are reasonable for the work performed.  *Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1037 (3d Cir. 1996).  It has been noted that "it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted."  *Rode v. Dellarciprete*, 892 F.2d 1177, 1190 (3d Cir. 1990) (citations and quotations omitted).  However, monthly cumulative totals do not provide a court with sufficient information to be able to properly evaluate the reasonableness of the amount of hours claimed.  *Keenan v. City of Philadelphia*, 983 F.2d 459, 473 (3d Cir. 1992).  In this situation, the Court would thus only be able to speculate "as to whether the hours claimed [are] reasonable for the work performed."  *Id.*  Accordingly, the Court will not award fees in any amount for legal services rendered by Devon Russ.

        4.       Jeffrey D. Smith, Esq.

Plaintiff requests $23,940.00 for legal services rendered by Mr. Smith representing 79.8 hours at the rate $300.00 per hour from May 2002 through April 2003. (Pl. Brief, Exh. G, Declaration and Billing Records of Jeffrey D. Smith.) Upon consideration of the submissions in support of the fee request for work performed by Mr. Smith in connection with the *qui tam* action, the Court finds that 52.5 of Mr. Smith's hours were spent in conferences or meetings with other attorneys, including Mr. Harbist and Mr. Van Schaick. Therefore, the Court will allow for the payment of fees for 27.3 hours of Mr. Smith's time at $300.00 per hour for a total of $8,190.00.

        **B.**       ***The Attorneys' Fees and Cost Will be Payable by MWC Only***

Plaintiff requests that any fee award be attributed against all defendants equally. Defendants contend that any fee award should be payable by MWC only, but that the award should be reduced in some proportion to account for time spent on "unsuccessful" claims or efforts against "non-settling" defendants. Defendants argue that the fee award should be "reduced by the portion allocable to work on claims against the defendants against whom Sprague did not prevail." (Def. Brief, p. 26.)

> A lawsuit sometimes produces voluntary action by the defendant that affords the plaintiff all or some of the relief he sought through a judgment – e.g., a monetary settlement or a change in conduct that redresses the plaintiff's grievances. When that occurs, the plaintiff is deemed to have prevailed despite the absence of a formal judgment in his favor.

*Hewitt v. Helms*, 482 U.S. 755, 761 (1987). Thus, a plaintiff has "prevailed" when the parties have settled. Therefore, it follows that a plaintiff has not "prevailed" against a non-settling

defendant.

Plaintiff contends that even though MWC was the only settling defendant, the amount of attorneys' fees should be apportioned among all defendants equally because "all defendants obtained a release" as a result of the settlement. (Pl. Brief, p. 27). The Settlement Agreement between the government and MWC states that it "is intended to be for the benefit of the Parties and Novicom, Inc., Romaine Pierson Publishers, Inc., Medical World Business Press, Inc., Dental Learning Systems, Inc., John J. Hennessy II, Media/Communications Partners, and Christopher S. Gaffney, only." Morano Cert., Exh. B, Settlement Agreement ("Settlement Agreement"), ¶ 7. However, the agreement is specifically between MWC and the government, and the payment of the settlement amount is borne solely by MWC.

Thus, the fee award should be paid only by MWC because plaintiff cannot recover any portion of that amount from the non-losing (or non-settling) defendants. *Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208 (3d Cir. 1978). Accordingly, the Court will not reduce the lodestar amount; MWC shall pay the entire fee award as it was the only settling defendant against which plaintiff prevailed.

### C.     *Plaintiff is Not Entitled to a Fee Enhancement*

Upward modifications of the lodestar figure are permissible in "'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts." *Pennsylvania v. Delaware Valley Citizens's Council for Clean Air*, 478 U.S. 546, 565 (1986) (citations omitted). There is a strong presumption that the lodestar amount represents a reasonable fee award. *City of Burlington v. Dague*, 505 U.S. 557 (1992). The following do not

constitute factors that would justify an upward modification in the lodestar amount as they are presumably reflected in the initial lodestar amount: "the novelty [and] complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation." *Delaware Valley*, 478 U.S. at 565 (1986) (internal quotations and citations omitted). Similarly, the "risks of litigation [and] the contingent nature of the case" are not to be considered in determining whether the lodestar amount should be enhanced. *Charles v. Goodyear Tire & Rubber Co.*, 976 F. Supp. 321, 326 (D.N.J. 1997).

Plaintiffs rely on *United States ex rel Garibaldi v. Orleans Parish School Bd.*, 46 F. Supp. 2d 546 (E.D. La. 1999) and argue that a fee enhancement is appropriate here because of the intangible, injunctive relief that was obtained through the settlement. The holding in *Garibaldi* is not directly applicable to this case because there, the government did not intervene in the *qui tam* action and, also, in *Garibaldi*, the relator won a verdict from the court. Here, the Government settled the *qui tam* claim. While Mr. Sprague's efforts might have been a large contributing factor to the implementation of the compliance program to be implemented by MWC, Mr. Sprague has already been compensated for his efforts by the 21% share of the settlement proceeds awarded to him by the Government. Accordingly, the lodestar amounts, as adjusted by the Court, represent reasonable fees and the Court finds no basis for enhancing the lodestar.

*D.     Costs*

Plaintiff also claims costs and disbursements in the following amounts:

| | | |
|---|---|---|
| Nicholas C. Harbist, Esq. (Blank Rome LLP) | $4,299.40 | (Pl. Reply, Exh. D, Supplemental Declaration of Deborah Giaquinto) |
| Peter Van Schaick, Esq & Devon Russ, Paralegal | $2,502.00 | |
| Jeffrey D. Smith | $ 309.15 | (Pl. Brief, Exh. G, Declaration of Jeffrey D. Smith) |

Plaintiff has not submitted supporting documentation for the amount of costs associated with Mr. Van Schaick and Ms. Russ' work, therefore the Court will not include the requested amount in the costs payable to plaintiff. Thus, the total amount of costs payable to plaintiff is $4608.55.

## II.      CONCLUSION

For the foregoing reasons, plaintiff, Peter F. Sprague is awarded $236,026.83 in attorneys' fees and $4608.55 in costs.  An appropriate form of order is filed herewith.


      s/ Garret E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.